UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ALAUDDIN FARUQUE | ) | Case No. 07-13375-SSM |
| | ) | Chapter 7 |
| Debtor | ) | |
| | ) | |
| WALI WAKILPOOR | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 09-1017 |
| | ) | |
| ALAUDDIN FARUQUE *et al.* | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OPINION**

Before the court are cross-motions for summary judgment in this action to determine the dischargeability of an unlisted debt. Hearings were held on October 13 and November 16, 2009. The plaintiff, Wali Wakilpoor, was present in person and represented himself. The defendant, Alauddin Farque, was present in person and was represented by counsel. For the reasons stated, the court determines that the defendant is entitled to summary judgment because the plaintiff has not made a showing sufficient to support a piercing of the corporate veil so as to hold the defendant liable for the judgment the plaintiff and his wife obtained against Amar Construction Company, Inc.

Factual and Procedural Background

Alauddin Faruque ("the debtor") filed a voluntary petition in this court on November 5, 2007 for relief under chapter 7 of the Bankruptcy Code. He received a discharge of his dischargeable debts on February 6, 2008. At the request of the trustee, creditors were notified of the need to file claims, with the bar date being March 10, 2008. The plaintiff, Wali Wakilpoor, was not listed as a creditor on the debtor's schedules and was not given notice by the clerk of the filing of the case or of the claims bar date. The trustee ultimately filed a report of no distribution on February 8, 2008. There has been no further administration of the case, although the case has not been formally closed.

Although many of the facts underlying the present action are disputed, those that are salient may be fairly summarized as follows. Sometime in 2000, Amar Construction Co., Inc., and Wakilpoor entered into a written contract to construct a new house for Wakilpoor and his wife at 3601 West Ox Road, Fairfax, Virginia, for $208,000. The record is unclear as to the identity of Amar's shareholders, directors, and officers during the relevant time frame. At various times, David Amar and Daljeet Dev have signed documents as president of the corporation. The company's federal income tax return as an S Corporation for 2004 and 2005 reflect Daljeet Dev as the only shareholder. In any event, there is no evidence that the debtor was involved in the negotiation of the contract or that he had any involvement with Amar until some time later.

At some point, the Wakilpoors became dissatisfied with the quality and progress of the work on their house. At a meeting in June 2004 to discuss their complaints, Dev and the debtor met with the Wakilpoors at a McDonald's restaurant. At that meeting, according to Wakilpoor's

interrogatory responses, the debtor berated them, saying, "You should be happy with the work we have done on your house." When Mr. Wakilpoor remonstrated by asking Dev, "Who is this guy?", Dev responded, "He is my partner." The outcome of the meeting is not shown by the summary judgment record, but matters were clearly not resolved, because a further meeting—attended by attorneys for Amar and the Wakilpoors—took place at the Wakilpoors' house on June 28, 2005. At that meeting a written settlement agreement drafted by counsel was discussed and signed. Under the agreement, Amar undertook, in settlement of claims asserted in then-pending litigation and without additional cost to the Wakilpoors except for certain materials, to build a deck, correct problems in the garage, refinish the front door, repair a roof leak and interor water damage, and install floor tile in the foyer. The affidavits are conflicting as to whether the debtor was present at the meeting. In any event, the settlement agreement was between Amar Construction Co., Inc. and the Wakilpoors, and was signed on Amar's behalf by David Amar, who is identified as the president of the company, but who apparently was not present at the meeting.

Following the settlement agreement, work on the Wakilpoors' house resumed, but according to the Wakilpoors was not properly completed. The Wakilpoors eventually brought suit in the Circuit Court of Fairfax County, Virginia, and obtained a judgment against Amar on December 3, 2008—slightly more than a year after the debtor's bankruptcy petition was filed—in the amount of $17,500. The debtor was not named as a defendant in that suit.

The present action was commenced on January 21, 2009—approximately six weeks after the Wakilpoors obtained the judgment against Amar—by the filing of a complaint against the debtor and the chapter 7 trustee (against whom, however, no relief was requested) entitled

"Complaint for Damages and to Determine Dischargeability of Debt." By memorandum opinion and order of April 9, 2009, the court determined that the complaint did not plead *any* ground for excluding a debt from discharge, but that, though inartfully pleaded, it did fairly state a claim for revocation of the debtor's discharge *except* that no sufficient facts were pleaded to show that Wakilpoor had a claim against the debtor as opposed to Amar. *Wakilpoor v. Faruque (In re Faruque)*, 413 B.R. 309 (Bankr. E.D. Va. 2009). The court therefore dismissed the complaint, but without prejudice to the filing of a complaint to determine the dischargeability of the claim under § 523(a)(3), Bankruptcy Code, which excludes unlisted debts from discharge in certain circumstances. *Id.* An amended complaint was filed on April 27, 2009. The debtor's motion to dismiss the amended complaint was denied, and an answer was filed on July 14, 2009. The debtor's motion for summary judgment was filed on September 5, 2009, and was supplemented on October 29, 2009. The plaintiff's cross-motion for summary judgment was filed on October 27, 2009. Discovery is complete, and the issues are ripe for determination.

Discussion

I.

Under Rule 56, Federal Rules of Civil Procedure, which is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment may be entered against either a claiming or defending party without the necessity of a trial "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained, summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal

4

Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). In ruling on motion for summary judgment, a court should believe the evidence of the non-movant, and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Put another way, it is improper for the court, in evaluating conflicting evidence, to make credibility determinations or to draw adverse inferences against the non-moving party. *Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345 (4th Cir. 2007). At the same time, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Although a moving defendant has the burden of showing that there is no genuine issue of fact, the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict. *Id.* at 256, 106 S.Ct. at 2514. In particular, when a motion for summary judgment is properly made and supported, an opposing party may not simply rely on allegations or denials in its own pleadings, but must, by affidavits or otherwise, set out specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e)(2).

II.

The claim of an unlisted creditor is excluded from discharge in two circumstances. The first is if the creditor was not scheduled in time to file a timely proof of claim. § 523(a)(3)(A), Bankruptcy Code. If notice of a need to file proofs of claim was given, an unlisted debt is not discharged even if—as here—no dividend is ultimately paid to creditors. *Geris v. Mackintosh (In re Geris)*, 240 B.R. 228 (Bankr. W.D. Va. 1999). The second circumstance is if the

creditor's claim would otherwise fall within the discharge exceptions for fraud, embezzlement, larceny, fiduciary defalcation, or willful and malicious injury as set forth in §§ 523(a)(2), (4), or (6), Bankruptcy Code, and the creditor was not scheduled in time to file a timely complaint to determine the dischargeability of the claim.[1] § 523(a)(3)(B), Bankruptcy Code.  In either event, the creditor must not have had notice or actual knowledge of the bankruptcy case in sufficient time to have filed a timely proof of claim or dischargeability complaint, whichever is applicable § 523(a)(3)(A)-(B), Bankruptcy Code.  But unless the creditor has been deprived of the right to file a timely proof of claim or dischargeability complaint, the claim of an unlisted creditor is discharged, even if the debtor's omission of the creditor was deliberate. *Horizon Aviation of Va., Inc. v. Alexander*, 296 B.R. 380 (E.D. Va. 2003) (holding that unlisted debt not incurred by fraud or willful and malicious injury was discharged in no-asset case regardless of debtor's intent in failing to list the debt, and creditor's post-discharge judgment was void).

In the present case, since a bar date of March 10, 2008, was set for filing a proof of claim, and since Wakilpoor was not listed as a creditor in time to file a proof of claim, his claim is excluded from discharge (without regard to whether it falls within one of the fault-type exceptions to discharge) unless he had notice or actual knowledge of the bankruptcy filing in time to file a proof of claim.  Although there is no affirmative evidence in the record as to exactly when Wakilpoor learned of the bankruptcy filing, the record fairly supports an inference that it was not until after he obtained the judgment against Amar on December 3, 2008, which

---

[1] The time limit for filing complaints to determine the dischargeability of debts alleged to be excepted from discharge under §§ 523(a)(2), (4), or (6), Bankruptcy Code, is 60 days from the first date set for the meeting of creditors.  § 523(c), Bankruptcy Code; Fed.R.Bankr.P. 4007(c). In the debtor's case, the first date set for the meeting of creditors was December 3, 2007, and the last day for filing complaints governed by § 523(c) was February 1, 2008.

would have been nearly 10 months after the claims bar date. Thus, to the extent he has a valid claim against the debtor, it has not been discharged.

### III.

The question remains, however, as to whether there is actually a debt to be excepted from discharge. The Wakilpoors' judgment is against Amar, not against the debtor. It is curious, to say the least, that if the Wakilpoors thought they had a valid claim against the debtor, that they did not name him as a defendant in the state court action. While Wakilpoor proffers extensive evidence of the debtor's involvement both with Amar and with work on the project, that evidence, even if construed most favorably to Wakilpoor, is insufficient to establish independent liability on the part of the debtor for the defective work at the house. The Wakilpoors' contract and the subsequent settlement agreement were solely with Amar, and there is no evidence of any contract between the Wakilpoors and the debtor. Even if there was some kind of contract between Amar and the debtor under which work was outsourced to the debtor, the Wakilpoors, having no privity of contract with the debtor, cannot assert a claim against him for breach of contract. Nor, in the court's view, is there sufficient evidence to create a triable issue that the debtor is liable to the Wakilpoors in tort. Although Wakilpoor asserts in his interrogatory responses that the debtor came to his house, and, after introducing himself, made a number of representations—including that he was a professional builder with a lot of experience and was expert with masonry and deck work and had "a Fairfax license to build the deck" on their house—all such representations were made *after* the settlement agreement was signed and Amar resumed work on the house. Thus such representations, even if false, and even if they went

beyond mere puffery, would not support an action for fraudulently inducing the Wakilpoors to enter into the settlement agreement with Amar, let alone the original contract.

IV

Nevertheless, as pointed out in the court's prior opinion, the debtor *could* be held liable for the judgment against Amar *if* a proper basis were shown for piercing the corporate veil.

A.

Although the general rule in Virginia is that a corporation is a separate legal entity from its directors and shareholders, in extraordinary circumstances the separate identities of the corporation and those behind it may be disregarded, with the result that the individuals will be liable for the corporation's debts. The Supreme Court of Virginia, however, has set a very high bar for this type of action. By piercing the veil, a court effectively casts aside the cloak of corporate limited liability—disregarding the statutorily created corporate fiction and imposing upon the shoulders of investors the very financial obligations from which they sought to be sheltered at the time of incorporation. *Beale v. Kappa Alpha Order*, 192 Va. 382, 395, 64 S.E.2d 789, 796 (1951) ("The fundamental concept of a corporation is that it is a separate entity created under the law to enable a group of persons to limit their liability . . . to the extent of their contributions to the capital stock."). There can be little doubt that a free-wheeling application of veil piercing would have a chilling effect upon corporate investors, thereby frustrating the fundamental economic policies that undergird the corporate scheme. *See Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 212, 360 S.E.2d 828, 831 (1987).

Noting these concerns, the Supreme Court of Virginia has consistently held that only an "'extraordinary exception' justifies disregarding the corporate entity and piercing the veil." *C.F.*

*Trust, Inc. v. First Flight Ltd. P'ship*, 266 Va. 3, 10, 580 S.E.2d 806, 810 (2003) (quoting *Greenberg v. Commonwealth*, 255 Va. 594, 604, 499 S.E.2d 266, 272 (1998)).  As the Court explained:

> [N]o single rule or criterion can be applied to determine whether piercing the corporate veil is justified, and that the corporate entity will be disregarded and the veil pierced only if the shareholder sought to be held personally liable has controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage. Piercing the corporate veil is justified when the unity of interest and ownership is such that the separate personalities of the corporation and the individual no longer exist and to adhere to that separateness would work an injustice.

*First Flight*, 266 Va. at 9–10, 580 S.E.2d at 809–10 (internal citations omitted).  The Court further explained that "'[t]he decision to disregard a corporate structure to impose personal liability is a fact-specific determination, and the factual circumstances surrounding the corporation and the questioned act must be closely scrutinized in each case.'" *Id.* at 10 (quoting *Greenberg v. Commonwealth*, 255 Va. at 604, 499 S.E.2d at 272).

The relevant factors Virginia courts have considered in applying the veil piercing doctrine include: (1) failure to maintain adequate corporate records or to comply with corporate formalities; (2) the commingling of corporate funds with personal funds; (3) undercapitalization of the corporation so as to frustrate creditors; (4) making fraudulent transfers of corporate funds by the dominant shareholder; (5) non-functioning of other officers and directors; and (6) breach of a fiduciary duty to creditors. *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit* Co., 540 F.2d 681 (4th Cir. 1976); *Concrete Ready-Mix of Lynchburg, Inc. v. County Green Ltd. P'ship (In re County Green Ltd. P'ship)*, 438 F. Supp. 701 (W.D. Va 1977), *overruled on other grounds by In re County Green Ltd. P'ship*, 604 F.2d 289 (4th Cir. 1979); *Dana v. 313 Freemason*, 266

Va. 491, 587 S.E.2d 548 (2003); *Greenberg v. Commonwealth*, 255 Va. at 604–05, 499 S.E.2d at 272; *O'Hazza v. Executive Credit Corp.*, 246 Va. 111, 431 S.E.2d 318 (1993); *Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. at 213–14, 360 S.E.2d at 831–32; *Lewis Trucking Corp. v. Commonwealth*, 207 Va. 23, 147 S.E.2d 747 (1966); *see also In re Kreisler*, 331 B.R. 364 (N.D. Ill. 2005).

B.

The issue, then, is whether Wakilpoor's evidence (including his responses to the debtor's interrogatories) is sufficient, if believed, to support a finding that the debtor is liable as an alter ego for the judgment against Amar. That evidence shows that the Wakilpoors first met the debtor in June 2004—four years after the contract was signed, and apparently well into the construction of the house—at a meeting to discuss the complaints the Wakilpoors had with the work Amar had done, and that Dev identified the debtor at that meeting as his partner. Although the debtor denies that he was present at the subsequent June 2005 meeting at which the settlement agreement was signed, the court—at least for the purpose of summary judgment— will assume that he was and that, as Wakilpoor asserts in his interrogatory responses, he "was observing every mistaken work" in the house. Following the settlement and after Amar began working on the house, the debtor came by the house to—as Wakilpoor characterizes it—"impress" the Wakilpoors. On that occasion, according to Wakilpoor, the debtor "act[ed] like a business man," gave his business card and told the Wakilpoors that he was a professional builder, that he had a lot of experience, and that he did electric work, masonry, and plumbing work and was a good deck builder. Among the exhibits offered by Wakilpoor is a copy of a business card for Amar Construction Company, Inc., imprinted with the debtor's name (although

no title).  According to the affidavit of Wakilpoor's wife, the debtor came by the house on a number of occasions to drop off laborers, fix roof shingles, build a deck, install foyer tiles, pick up checks, and that when he was there he "acted as a supervisor."  Wakilpoor also offers a copy of a settlement agreement dated July 5, 2006, with another client of Amar, Jatinder Sayal, which both Dev and the debtor signed, Dev "in his capacity as President of Amar Construction Co, Inc.," and the debtor "in his capacity as Partner of Amar Construction Co., Inc."  Wakilpoor further offers evidence that the debtor had a Home Depot charge account in which he was identified as an employee of "Amar Construction" and that when he applied for a mortgage loan, he represented that he was employed as a "Sr. Supervisor" by Amar Construction, Inc.  Finally, Wakilpoor provides evidence of a number of payments made by Amar to the debtor, including $5,000 in March 2005 and over $2,600 in January 2006.

Although the court readily concludes that Wakilpoor has offered substantial evidence of the debtor's involvement with both the project and with Amar, mere employment by a corporation, even in a supervisory capacity, or mere participation with a corporation in carrying out its contract, is insufficient to make an individual liable for the corporation's breach of contract.  The evidence before the court falls substantially short of showing that the debtor was ever an owner of Amar or that, even if not an owner, he "controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage," *First Flight*, 266 Va. at 9–10, 580 S.E.2d at 809–10, as required to pierce the corporate veil.

C.

That the Wakilpoors feel themselves justly aggrieved is apparent, and the court has great sympathy for the situation they find themselves in.  They had every right to expect that Amar would perform its contractual obligations in a timely and workmanlike manner.  That in particular the deck, which appears to have been built under the debtor's supervision, fails to comply with the building code and may possibly have to be demolished and rebuilt at considerable expense, is undoubtedly distressing.  But the simple fact is that the Wakilpoors contracted with Amar, not with the debtor, and their judgment is solely against Amar.  Under Virginia law, disregard of the corporate form to impose liability on those behind the corporation is an extraordinary remedy that is not lightly granted.   The evidence in this case, even when viewed most favorably to the plaintiff, simply does not support a finding of extraordinary circumstances.  Because the evidence is insufficient to hold the debtor liable for breach of the construction contract or settlement agreement with Amar, the debtor's motion for summary judgment will be granted and the plaintiff's motion for summary judgment will be denied.

A separate order will be entered consistent with this opinion.

Date: _____          _____
                                        Stephen S. Mitchell
Alexandria, Virginia                    United States Bankruptcy Judge

Copies to:

Wali Wakilpoor
3601 West Ox Rd.
Fairfax, VA 22033
Plaintiff *pro se*

David E. Jones, Esquire
11211 Waples Mill Road, Suite 210
Fairfax, VA  22030
Counsel for the defendant